

O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| LA ASOCIACION DE TRABAJADORES DE LAKE FOREST ("ATLF"), or WORKERS' ASSOCIATION OF LAKE FOREST; THE COLECTIVO TONANTZIN; and THE NATIONAL DAY LABORER ORGANIZING NETWORK,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LAKE FOREST, et al.,<br><br>Defendants. | CASE NO. SA CV 07-250 DOC (ANx)<br><br>O R D E R GRANTING IN PART AND DENYING IN PART MOTION REGARDING STANDING |

_____

Before the Court is Defendants Sandra Hutchens, Don Barnes, Jay LeFlore, and Chris Thompson's (the "Orange County Defendants") Memorandum of Points and Authorities Regarding Standing ("Standing Motion").  The Court treats the Standing Motion as a motion for summary judgment regarding the issue of standing.  After considering the moving and opposing papers, as well as oral argument by the parties, the Court hereby GRANTS IN PART and DENIES IN PART the Standing Motion.

**I.     BACKGROUND**

Plaintiffs are three unincorporated associations – "ATLF," "NDLON," and "Colectivo" – dedicated to defending the rights of immigrant workers and day laborers (the "Laborers").  On March 2, 2007, they brought suit seeking declaratory and injunctive relief against Defendants in an effort to block the enforcement of Section 5.06.020 of the Lake Forest Municipal Code (the "Ordinance") and other conduct "discouraging the protected speech the [Ordinance] prohibits."  The City repealed the Ordinance, effective April 3, 2007.

Following the City's repeal of the Ordinance, Plaintiffs filed a First Amended Complaint on April 19, 2007, for which the Court granted leave to further amend on June 19, 2007 and on November 27, 2007.  Plaintiffs now allege that Defendants continue to discourage the constitutionally protected speech of day laborers and violate Plaintiffs' and others' rights under the First Amendment.

On July 23 and July 25, 2008, Plaintiffs stipulated to dismiss their causes of action against all defendants except for the remaining Orange County Defendants.  The remaining issue to litigate is whether or not members of the Orange County Sheriff's Department "target the expressive activities of day laborers, like ATLF's and NDLON's members, who indicate their availability for work on sidewalks and on other public areas in Lake Forest."  Third Amended Complaint.

Plaintiff ATLF is an unincorporated association of day laborers who regularly seek work by expressing their availability while standing on public sidewalks in the City of Lake Forest.  The day laborers formed the ATLF in or around January 2007, with the purpose of joining together to defend their right to solicit work in the public fora in the City and to address the difficulties that they faced in seeking work.  The individuals that comprise ATLF carry out their common purpose by learning about their rights and responsibilities and addressing issues that affect them, such as police enforcement, community relations, and wage and hour claims.  The organization sometimes collaborates with other organizations, such as NDLON and Colectivo.  Subgroups of ATLF members meet at least once a week at each of the three corners in the City where they gather to seek work: Jeronimo and Orange, Jeronimo and Cherry, and Orange and

2

Front. At times, the subgroups meet as one larger group to make decisions, be informed, or plan an activity in furtherance of the common purpose.

NDLON is a California 501(c)(3) corporation comprised of 38 member organizations from across the United States. NDLON's mission is to improve the lives of day laborers in the United States. NDLON works to unify and strengthen member organizations to be more strategic and effective in their efforts to develop leadership, mobilize, and organize day laborers in order to protect and promote civil, labor, and political rights. NDLON has six broad program areas: (1) promote worker centers as preferred public policy responding to day laborer concerns; (2) develop educational materials and organizing materials for member organizations; (3) help day laborers defend their wage and hour rates; (4) work in partnerships with national organizations to effectuate comprehensive immigration reform with the path to citizenship and political equality for day laborers; and (6) work on gender equality among its member organizations. ATLF contacted NDLON in February 2007 to report alleged harassment by the police in the City. As a result, NDLON assigned an organizer to meet with ATLF. For the last year and a half, this organizer has met with ATLF once a week for approximately two and a half to three hours.

Colectivo is an unincorporated organization, formed in July 2004, dedicated to protecting the interests of immigrant workers and their families in Orange County and ensuring that they receive equal protection under the law. Some activities in which Colectivo is involved include planning and supporting marches, educating members and the public about human rights and international law, health, and nutrition, and working in gardens in order to produce food and educate about food production and consumption. Colectivo depends on private donations and contributions, and its members are volunteers. In December 2006, Colectivo formed a committee to address human rights and civil rights issues in the city involving day laborers. Colectivo members frequently visit the corners where ATLF members express their availability for work to provide support, counseling, and education.

In the instant Standing Motion, Defendants ask the Court to determine that Plaintiffs lack standing.

## II.   LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49. Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

Standing is a question of law to be decided by the Court. *See San Diego Gun Rights Committee v. Janet Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996). An organization or association

1    may claim standing in two separate and distinct ways.  First, it may claim standing as a

2    representative of its members, known as representational or associational standing.  *Smith v.*

3    *Pacific Properties and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).  Second, it may claim

4    standing in its own right, known as organizational standing, which turns "on whether the

5    organization itself has suffered an injury in fact."  *Id.*  Here, ATLF claims associational standing

6    on behalf of its members, and NDLON and Colectivo claim organizational standing on their own

7    behalf based on their claims of diversion of resources and frustration of their missions.

8            **A.    ATLF**

9            The Court first addresses whether ATLF has established associational standing.  An

10   association has standing to bring suit on behalf of its members when:

11                   (a) its members would otherwise have standing to sue in their own

12                   right; (b) the interests it seeks to protect are germane to the

13                   organization's purpose; and (c) neither the claim asserted nor the

14                   relief requested requires the participation of the individual members

15                   of the lawsuit.

16   *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343, 97 S.Ct. 2434 (1977).

17   Here, Defendants challenge ATLF's claim to associational standing on two primary grounds.

18   First, Defendants argue that there is no associational standing to claim damages because such

19   claims would require the participation of the individual members in the lawsuit.  Second,

20   Defendants argue that ATLF has failed to demonstrate proof of actual members or any viable

21   indicia of membership to enable it to assert associational standing.

22           As to the first argument, ATLF clearly indicates that it does not seek damages.

23   Accordingly, there are no damages claims that will require participation of the individual

24   members in the lawsuit.

25           In regard to Defendants' second ground for contesting associational standing, the Court

26   finds that ATLF has presented sufficient evidence to indicate membership and indicia of

27   membership in order to allow its claims to survive.  Referring to the Article III associational

28   standing test, the D.C. Circuit explained that, "[t]he threshold requirement for even applying this

                                              5

1    test is that the organization has actual members or indicia of membership." *American*

2    *Immigration Lawyers Ass'n v. Reno*, 18 F.Supp.2d 38, 51 n.12 (D.C. Cir. 1998) (citing *Hunt*,

3    432 U.S. at 342-343).

4         In *Hunt*, the Supreme Court upheld the District Court's finding that the Washington State

5    Apple Advertising Commission had associational standing to bring suit on behalf of the

6    individual dealers and growers who form its constituency.  *See Hunt*, 432 U.S. at 345.  There,

7    the Supreme Court held that "while the apple growers and dealers are not 'members' of the

8    Commission in the traditional trade association sense, they possess all the indicia of membership

9    in an organization." *Id.* at 344.  These indicia of membership included that "they alone elect the

10   members of the Commission; they alone may serve on the Commission; they alone finance its

11   activities, including the costs of this lawsuit, through assessments levied upon them." *Id.*  The

12   Supreme Court further explained that, "[i]n a very real sense, therefore, the Commission

13   represents the State's growers and dealers and provides the means by which they express their

14   collective views and protect their collective interests." *Id.*

15        In *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003), the Ninth Circuit

16   applied *Hunt* to find that the Oregon Advocacy Center had standing.  The Ninth Circuit

17   explained the following:

18              Admittedly, the constituents of OAC do not have all the indicia of

19              membership that the Hunt apple growers and dealers possessed.

20              OAC is funded primarily by the federal government, and not by its

21              constituents.  OAC's constituents are not the only ones who choose

22              the leadership of OAC, and they are not the only ones who may

23              serve on OAC's leadership bodies.  Nevertheless, OAC's

24              constituents do possess many indicia of membership-enough to

25              satisfy the purposes that undergird the concept of associational

26              standing: that the organization is sufficiently identified with and

27              subject to the influence of those it seeks to represent as to have a

28              'personal stake in the outcome of the controversy.'

1  *Oregon Advocacy Ctr.*, 322 F.3d at 1111.

2          Here, Defendants argue that ATLF has no indicia of membership in order to allow it to

3  claim associational standing.  In so doing, Defendants point to the amorphous nature of ATLF –

4  that it purports to represent those day laborers that seek work at one of three corners in the City:

5  Jeronimo and Orange; Jeronimo and Cherry; or Orange and Front.  Defendants further point to

6  the informal structure of the group and the fact that its meetings occur when NDLON's West

7  Coast Field Coordinator, Veronica Federovsky, travels to the street corners of Lake Forest and

8  speaks with whomever happens to be gathered at the location.  Defendants also explain that

9  ATLF "has no street address, no telephone number, no internet website, requires no paper work

10  to become a member, collects no fees or dues, has no elected leadership, has no governing body,

11  has no employees, publishes no written materials, circulates no written materials among its

12  group, undertakes no recruitment efforts, and maintains no membership list."  Defs.' Memo. at

13  7:15 - 8:4.

14          Although the Court acknowledges that the membership structure of ATLF is amorphous,

15  the Court finds that ATLF has presented sufficient evidence to overcome Defendants' Standing

16  Motion.  Day laborer activities can, by their very nature, lead to amorphous group definitions.

17  Nonetheless, Plaintiffs have shown actual membership in ATLF, as well as actual activities and

18  participation by members in working toward a common purpose.

19          As explained by Plaintiffs, "ATLF members are day laborers that seek work at one of

20  three corners in the city: Jeronimo and Orange; Jeronimo and Cherry; or Orange and Front . . .

21  ATLF members also attend more than one meeting or otherwise participate in ATLF activities."

22  Pls.' Memo. at 6 n.6.  Thus, the definition of the group presumes both that the members seek

23  work at one of the defined locations, and that they participate in meetings or ATLF activities.

24  Furthermore, ATLF has approximately 40 to 50 members.  Helzer Decl., Ex. F at 89.  In

25  addition, specific individual witnesses, L.M., J.A.R., and J.L., have testified that they were

26  members of ATLF, including testimony such as the length of time they had been members.

27  Helzer Decl., Ex. J at 146; Ex. K at 152, 156; Ex. I at 136-137.  This evidence supports a

28  conclusion that ATLF has "actual members," which would be sufficient to satisfy the threshold

1   requirement.  *See American Immigration Lawyers Ass'n* at 18 F.Supp.2d at 51 n.12.

2          There is also evidence regarding indicia of membership, based on specific participation of

3   ATLF members in ATLF's activities and governance.  For example, members attend meetings,

4   participate in ATLF activities, such as "know your rights" trainings and free community clean-

5   up assistance to victims of recent fires and landslides, make a commitment to maintain order

6   amongst themselves, and assist in the prosecution of this litigation.  Helzer Decl., Ex. F at 86-88,

7   99; Ex. I at 50.  Furthermore, decisions of ATLF are made by its members through their oral

8   vote or consensus.  Helzer Decl., Ex. F at 81, 93, 95, 96-98; Ex. K at 153; Ex. I at 139.  The fact

9   that the meetings are informal, or that the membership could change frequently, does not

10  preclude a finding that the organization has associational standing.

11         The evidence of actual membership and the evidence of indicia of membership, albeit

12  loosely structured membership, is sufficient to support a finding that ATLF has associational

13  standing to pursue the litigation.  Just as in *Hunt*, "[i]n a very real sense, therefore, the [ATLF]

14  represents the [City's day laborers] and provides the means by which they express their

15  collective views and protect their collective interests."  *Hunt*, 432 U.S. at 344.  Furthermore, the

16  evidence demonstrating participation of the members in ATLF, as well as the members' and

17  groups' aligned interests to defend the right of day laborers to solicit work in the City and

18  address the difficulties they face in seeking work, shows that "the organization is sufficiently

19  identified with and subject to the influence of those it seeks to represent as to have a 'personal

20  stake in the outcome of the controversy.'"  *Oregon Advocacy Ctr.*, 322 F.3d at 1111.  For these

21  reasons, the Standing Motion is denied as to ATLF.

22         **B.      NDLON and Colectivo**

23         Organizations are entitled to sue on their own behalf for injuries they have sustained.

24  *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197 (1975).  Organizational standing turns on

25  whether the organization itself has suffered an injury in fact.  *See Havens Realty Corp. v.*

26  *Coleman*, 455 U.S. 363, 378-379, 102 S.Ct. 1114 (1982).  In *Havens*, the Supreme Court held

27  that the plaintiff organization alleged sufficient injury in fact, where the plaintiff organization

28  alleged that it devoted significant resources to identifying and counteracting defendant's

1    discriminatory practices, and this diversion of resources frustrated the organization's ordinary

2    services.  *Id.* at 379.  Based on the allegations, the Supreme Court concluded that it was error for

3    the District Court to dismiss for lack of organizational standing.  *Id.*  However, the Supreme

4    Court noted that plaintiff "of course . . . will have to demonstrate at trial that it has indeed

5    suffered impairment in its role of facilitating open housing before it will be entitled to judicial

6    relief."  *Id.* at 379 n.21.

7           Plaintiffs NDLON and Colectivo rely on the holding in *Havens* to support organizational

8    standing.  In so doing, Plaintiffs make generalized claims of resources that were diverted.

9    However, at this summary judgment stage, Plaintiffs have failed to present sufficient evidence to

10   support a finding that they have "indeed suffered impairment" in their ordinary services and

11   purpose.  *Id.* at 379 n.21.  Accordingly, the Court finds that Plaintiffs have failed to present

12   sufficient evidence to show injury in fact.  Organizational standing for NDLON and Colectivo is

13   therefore improper.

14          The Court finds the holding in *Doe v. Vill. of Mamaroneck*, 462 F.Supp.2d 520, 542

15   (S.D.N.Y. 2006), to be persuasive.  There, the court specifically addressed whether NDLON had

16   organizational standing to pursue its claims.  The court explained the following:

17                 NDLON's entire reason for being is to pursue the sort of advocacy

18                 (including advising day laborers, advocating for them vis a vis

19                 municipalities, and instituting litigation) that it has pursued in this

20                 case.  This is how the organization expends its resources.  It thus

21                 stands to reason that spending staff time and resources on day

22                 laborer advocacy and advice does not work any injury to the

23                 organization. If all that an advocacy group like NDLON needed to

24                 prove to establish injury in fact were a "diversion" of resources away

25                 from an equivalent project in Santa Fe or Birmingham, then an

26                 advocacy organization would always have standing, because any

27                 money it expends on a project in location X could as easily have

28                 been expended on an identical project in location Y.  The fact that

1        the organization chose to support the Mamaroneck day laborers

2        means that it cannot support the day laborers in some other city, that

3        does not translate into an injury to NDLON caused by defendants.

4        NDLON simply made a choice about where and how to spend its

5        limited resources.

6  *Id.*  The court further explained that:

7        It is simply not the case that, as a result of defendants' actions,

8        NDLON has devoted resources to the day laborer situation in

9        Mamaroneck 'above and beyond what it would have in the ordinary

10        course of business,' because the ordinary course of business for

11        NDLON is responding to the ever-changing situations in the

12        localities on which it has chosen to focus.

13  *Id.*  In concluding that organizational standing was lacking, the court explained that "NDLON

14  offered no evidence of some other type of work that it does from which it was diverted by virtue

15  of having to come to send representatives to Mamaroneck."  *Id.*

16        In the instant action, NDLON states that its mission is to improve the lives of day laborers

17  in the United States.  NDLON further explains that its ordinary activities are to unify and

18  strengthen member organizations to be more strategic and effective in their efforts to develop

19  leadership, mobilize, and organize day laborers in order to protect and promote civil, labor, and

20  political rights.  Colectivo states that it is dedicated to protecting the interests of immigrant

21  workers and their families in Orange County and ensuring that they receive equal protection

22  under the law.  Both Colectivo and NDLON's activities related to the events involved in the

23  instant litigation fail to demonstrate impairment in the organizations' roles; in fact, NDLON and

24  Colectivo's actions in support of the day laborers in Lake Forest are directly in line with the

25  organizations' missions.  Furthermore, NDLON and Colectivo have failed to show any evidence

26  of specific activities in which they normally engage that they have been unable to conduct as a

27  result of the instant situation in Lake Forest.  Thus, the organizations' arguments that they have

28  been injured through a diversion of resources from their ordinary activities fail.  The broad,

1    conclusory statements of injury are insufficient to support injury in fact.

2         NDLON attempts to distinguish its actions in Lake Forest from its ordinary actions by

3    explaining that ATLF is not a member organization.  However, NDLON chose to incorporate

4    ATLF within the goals of its broader mission by voting to send Veronica Federovsky to meet

5    with ATLF.  Such activities are directly in line with its mission is to improve the lives of day

6    laborers in the United States, regardless of whether or not ATLF itself is a member organization.

7    Furthermore, Plaintiffs indicate that it is not uncommon for ATLF, NDLON, and Colectivo to

8    collaborate.  Thus, Plaintiffs have presented insufficient evidence to indicate that NDLON has

9    been injured by a necessity to divert resources from its normal activities to activities outside of

10   its normal realm.

11        For these reasons, the Court finds that NDLON and Colectivo lack organizational

12   standing.

13   **IV.    DISPOSITION**

14        For the reasons set forth above, Defendants' Standing Motion is GRANTED IN PART as

15   it pertains to NDLON and Colectivo, and DENIED IN PART as it pertains to ATLF.  NDLON

16   and Colectivo are deemed not to have standing to pursue their claims.

17

18   IT IS SO ORDERED.

19   DATED: August 18, 2008

20                                           _David O. Carter_
                                            _____
21                                              DAVID O. CARTER
                                            United States District Judge

22

23

24

25

26

27

28